## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. CORSO,                          )
                                           )
            Appellant,                     )      Civil Action No. 11-8
                                           )
      v.                                   )      Bankruptcy No. 09-23605-JAD
                                           )
MARYANN WALKER,                            )      Adv. No. 09-2516JAD
                                           )
            Appellee.                      )

## MEMORANDUM OPINION

### I.  INTRODUCTION

Pending before the Court is an appeal of an October 22, 2010 Memorandum Opinion and

Order of the Bankruptcy Court in Adversary Proceeding No. 09-23605.   (Docket No. 1).

Appellant Michael J. Corso ("Appellant" or "Corso") appeals the Bankruptcy Court's Order

denying his claims that certain of Appellee Maryann Walker's ("Appellee" or "Walker")

obligations are excepted from discharge under 11 U.S.C. § 523(a).  Based on the following, the

Court finds that the Bankruptcy Court correctly held that the exceptions did not apply; therefore,

the decision of the Bankruptcy Court is AFFIRMED.

### II.  BACKGROUND

As the Bankruptcy Court has fully set forth the factual background in its findings of fact

and conclusions of law supporting its decision, the Court restates only the facts pertinent to the

instant appeal.  (*See* Docket No. 1-11).  Corso and Walker were formerly married; they have

since divorced.  (Docket No. 1-39 at 51, 57-58).  For part of their marriage, Corso worked out of

the country, in Brazil, while Walker and their three children remained in the Pittsburgh area. (*Id*. at 51-54). Walker was tasked with managing the household in her then-husband's absence, including the household finances. (*Id*. at 54).

While they were still married, Walker signed her former husband's name on applications for two federal student loans and promissory notes guaranteeing payment of same for their daughter's college expenses (hereinafter the "outstanding student loans"). (*Id*. at 61-63, 97-98). The parties presented conflicting evidence at trial regarding whether Walker was authorized to sign Corso's name on the outstanding student loans and other important household documents. (*Id*. at 54-56, 61-64, 68-69, 72-73, 88-91, 97-98, 119-121, 132) The Bankruptcy Court resolved the conflicts in the evidence and specifically found that "[t]he evidence presented at trial clearly indicates that the parties had established a pattern and practice whereby [Walker] regularly signed [Corso's] name for the purpose of managing the parties' household affairs." (Docket No. 1-11 at 13).

In connection with their divorce, the parties executed a marital settlement agreement. (Docket No. 1-22, Plaintiff's Ex. 5). Pursuant to the settlement agreement, Walker agreed to satisfy "the outstanding parent plus school loans incurred for the parties' children's education." (*Id*. at § 3). Walker further agreed to "indemnify and hold harmless" Corso in relation to the student loan debts. (*Id*.). Corso presented evidence at trial, including testimony from the attorney who handled his divorce case, which suggested that Walker did not fully disclose the amount of the student loans during the divorce proceedings and negotiations. (Docket Nos. 1-25, 1-27, 1-29, Plaintiff's Exs. 8, 10, 12). From his view, the amount of the loans was only approximately $10,000.00, while in reality the amount was in excess of $40,000.00. (*Id*.; Docket

No. 1-39 at 61-64). In contrast, Walker testified that the amounts of the loans were never discussed and that she felt threatened by her husband during the negotiations, leading to her agreement to pay for the outstanding student loans. (Docket No. 1-39 at 91-93, 113-115, 121-122). The marital settlement agreement, however, does not provide a specific amount owed on the outstanding student loans. (Docket No. 1-22, Plaintiff's Ex. 5).

Thereafter, Walker ceased making payments on the student loans. Collection efforts were then commenced against Corso by the creditors. (Docket No. 1-39 at 64-67, 69-70, 105, 108-109, 115-116); *see also* Docket Nos. 1-24, 1-26, 1-32, Plaintiff's Exs. 7, 9, 15). He started receiving collection letters and his Social Security income checks were garnished by the federal government. (*Id.*).

Walker filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on May 15, 2009. (*See* Bankruptcy No. 09-23605-JAD). Corso then initiated the instant adversary proceeding against Walker on September 11, 2009. (Docket No. 1-2). In his Complaint, Corso sought both a judgment in excess of $46,000.00 and a determination that such debts were nondischargeable under the Bankruptcy Code. (*Id.*). Walker filed an answer denying Corso's claims and also seeking attorney's fees and costs. (*See* Docket No. 1-11 at 16-17).

A trial was held before the Bankruptcy Court on September 14, 2010 as to the contested issues. At trial, Appellant maintained that the instant debts were nondischargeable under several theories, including that: (1) such debt qualifies as a nondischargeable education loan under 11 U.S.C. § 523(a)(8); (2) such debt arose from a false representation or fraud pursuant to 11 U.S.C. § 532(a)(2), making it nondischargeable; and (3) such debt is nondischargeable because it was incurred pursuant to a divorce or separation agreement under 11 U.S.C. § 523(a)(15).

Subsequent to the trial, the Bankruptcy Court issued a Memorandum Opinion and Order denying all of Corso's claims. (Docket No. 1-11). The Bankruptcy Court found that the disputed debt could not be characterized as an education loan under § 523(a)(8) and was not within the exception under § 532(a)(2) because Walker's agreement to pay the student loans via the settlement agreement was not "money, property, services, or an extension, renewal, or refinancing of credit … obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). As a consequence, these claims of nondischargeability were dismissed, with prejudice. (Docket No. 1-11). The Bankruptcy Court also denied Corso's claim that the debts were nondischargeable under § 523(a)(15) because the obligations were incurred pursuant to a divorce or separation agreement. (*Id*. at 17). However, this claim was dismissed, without prejudice, given that the debt may be discharged if Walker "makes all plan payments on a confirmed plan in her Chapter 13 case." (*Id*. at 17). Finally, the Bankruptcy Court denied Walker's counterclaim for attorneys' fees and costs.[1] (*Id*. at 16-17).

Corso filed a Notice of Appeal with the Bankruptcy Court on November 5, 2010. (Docket No. 1). The record before the Bankruptcy Court was then produced and the Notice of Appeal and record were filed with this Court on January 5, 2011. (*Id*.). This Court entered an Order of Court setting forth the appellate briefing schedule on January 8, 2011. (Docket No. 3).

Pursuant to this Order, Corso filed his brief on January 24, 2011, (Docket No. 5), Walker filed her responsive brief on February 6, 2011, (Docket No. 6), and Corso filed his reply brief on February 22, 2011 (Docket No. 7). No further briefing has been submitted and the matter is fully briefed and ripe for disposition.

---

[1] Walker has not filed a cross-appeal challenging this ruling. Thus, the Court will not consider same on appeal.

III. LEGAL STANDARD

This Court has appellate jurisdiction over final judgments, orders and decrees of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The Court reviews a bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law under a *de novo* standard. *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 (3d Cir. 2006).

IV. DISCUSSION

As noted, on appeal, Walker challenges both the factual findings of the Bankruptcy Court and its conclusions of law. (Docket Nos. 5, 7). In this Court's opinion, the alleged factual errors underlie and relate to the contested legal rulings. Therefore, the Court will address the parties' positions related to the Bankruptcy Court's factual findings first, and then discuss their arguments as to the supposed errors in the Bankruptcy Court's legal conclusions.

*A. Factual Findings – Authorization of Walker to Sign Student Loans on Corso's Behalf*

In its post-trial Memorandum Opinion, the Bankruptcy Court held that "[t]he evidence presented at trial clearly indicates that the parties had established a pattern and practice whereby [Walker] regularly signed [Corso's] name for the purpose of managing the parties' household affairs." (Docket No. 1-11 at 13). Corso contests this finding. (Docket No. 5). He asserts that the Bankruptcy Court erred in determining that Walker was authorized to sign his name on the school loans and guarantees. (*Id.*). He maintains that the Bankruptcy Court failed to review the totality of the evidence and erred in its finding that Walker did not commit fraud by signing her husband's name, without his consent. (*Id.*). In response, Walker argues that the Bankruptcy Court correctly determined that she was authorized to sign on her husband's behalf and that this

Court should give deference to the Bankruptcy Court's credibility determinations. (Docket No. 6).

This Court reviews a Bankruptcy Court's findings of fact under a "clearly erroneous" standard. A Bankruptcy Court's "findings of fact are clearly erroneous when, after reviewing the record, the appellate court 'is left with the definite and firm conviction that a mistake has been committed.'" *In re Piccoli*, Civ. Action No. 06-2142, 2007 WL 2822001 (E.D.Pa. Sept. 27, 2007) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Under this standard, "[i]t is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted). In reviewing the Bankruptcy Court's findings, the Court gives "due regard" to the Bankruptcy Court's credibility determinations. Fed.R.Bk.P. 8013.

In this Court's estimation, a fair reading of the record demonstrates that the Bankruptcy Court properly considered and exercised its discretion to weigh the evidence. The challenged factual findings hinged, in large part, on a credibility determination regarding the evidence presented to the Bankruptcy Court. As the trier of fact, the Bankruptcy Court was in a better position to evaluate the credibility of the witnesses than is this Court. *See In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007) ("The Bankruptcy Court is best positioned to assess the facts, particularly those related to credibility…"). Thus, this Court defers to the Bankruptcy Court's factual findings, which are not clearly erroneous and, indeed, are supported by the record. *See*

*DiFederico*, 201 F.3d at 208.

The Court also rejects Corso's arguments that the Bankruptcy Court relied only on a single email[2] in support of its findings of fact and also ignored the evidence presented by Corso's former attorney. (Docket No. 5). Instead, the Bankruptcy Court's well-reasoned decision demonstrates that all of the relevant evidence was considered. The Bankruptcy Court simply found Walker's evidence on the issue more credible than the evidence Corso presented and sufficiently detailed the reasons for its findings. Specifically, the Bankruptcy Court held that:

> Both [Walker] and all three of the parties' children unanimously testified that [Corso] had on several occasions, and for a variety of purposes, authorized [Walker] to sign his name on documents concerning the parties' finances. In fact, the parties' children each testified it was a running household joke that [Corso] would never sign tax return documents out of fear of triggering an audit because his signature would not match [Walker's] version which typically appeared on the tax return documents.
>
> …
>
> Further, [Corso's] insistence that at the time the Loan Applications were signed, [Walker] was no longer authorized to sign his name is not credible. [Walker] produced an e-mail dated February 23, 2004, more than a year after the second Loan document was signed and less than three months prior to the execution of the Settlement Agreement, in which [Corso] explicitly authorized [Walker] to sign his name concerning the sale of a family vehicle. In addition, [Corso] admitted that he did not stop depositing his paychecks into the parties' joint bank account, over which [Walker] had full control, until the month prior to the execution of the Settlement Agreement. [Corso] also admitted that he and [Walker] had agreed to pay for their daughter's college expenses, and that [Corso] was aware [Walker] signed his name on certain student loans prior to entering into the Settlement Agreement. In sum, while [Corso] insists he did not specifically authorize [Walker] to sign his name on the Loan Applications, the evidence indicates that [Walker] was tasked with running the household, and was authorized to sign

---

[2]    Corso's email to Walker, dated February 23, 2004, stated that "[t]he van you can sell without me. Just sign my name. I thought $100 per pay was going into that account." (Docket No. 1-13 at 4).

[Corso's] name for the purpose of doing so.

(Docket No. 1-11 at 13-14).  These factual findings clearly support the Bankruptcy Court's conclusion that Walker was indeed authorized to sign her former husband's name on the loan applications.

Plaintiff argues that this evidence is undermined by the evidence presented by Corso's former attorney – who represented him in the subsequent divorce proceedings and negotiations. (Docket No. 5).  However, this evidence was not relevant to the issue of whether Walker was authorized in the first instance to sign the loan applications on behalf of her former husband.  At most, such evidence was relevant as to whether Walker's failure to disclose the true amount of the student loans constituted fraud or misrepresented facts to Corso during the negotiation of the divorce settlement.[3]  Thus, the attorney's testimony does not undermine the factual findings relevant to the household practices and Walker's authorization to sign documents on his behalf, as Corso suggests.

For these reasons, the Bankruptcy Court did not err in its factual findings that Walker was authorized to sign her husband's name on the loan applications and parental guarantees.

*B.  Conclusions of Law – Applicability of Exceptions to Discharge under § 523(a)*

The Court also holds that the Bankruptcy Court did not abuse its discretion in its interpretation and application of the relevant Bankruptcy Code provisions.  Chapter 13 of the Bankruptcy Code permits the discharge of certain debts upon the debtor's completion of all payments under a reorganization plan approved by the Bankruptcy Court, subject to exceptions

---

3       The Bankruptcy Court rejected this argument as well, finding that the amount was not relevant to the disposition of Corso's claims.  *See* § IV.B.2, *infra*.

specifically delineated in the Code. *See* 11 U.S.C. § 1328(a).[4] Notably excepted from discharge

under these provisions include student loan debts under § 523(a)(8) and debts procured by fraud

or false representations under § 523(a)(2)(A). *See* 11 U.S.C. §§ 523(a)(2)(A), (a)(8). However,

debts incurred pursuant to a marital settlement agreement are not specifically excepted from

discharge. *See In re Kennedy*, 442 B.R. 399, 401 (Bankr.W.D.Pa. 2010) (citing 11 U.S.C. §

1328(a)(2)) ("With respect to a 'normal' discharge granted upon completion of a Chapter 13

plan, debts described in Section 523(a)(15) are not excepted from discharge although debts under

Section 523(a)(5) are excepted from discharge."). Hence, such debts are dischargeable after the

debtor's successful completion of a Chapter 13 reorganization plan. 11 U.S.C. § 1328(a).

"Statutory exceptions to discharge are generally construed 'narrowly against the creditor

and in favor of the debtor.'" *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) (quoting *In re*

*Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993)). "The creditor opposing discharge therefore has

the burden of establishing that an obligation is not dischargeable," *id*. (citing *Grogan v. Garner*,

498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)), by a preponderance of the evidence,

*Cadle Co. v. Zofko*, 380 B.R. 375, 382 (W.D. Pa. Jan. 23, 2007).

The Bankruptcy Court determined that the debts in question did not fall within the

---

[4]    11 U.S.C. § 1328(a) provides, in relevant part, that:

> as soon as practicable after completion by the debtor of all payments under the
> plan … unless the court approves a written waiver of discharge executed by the
> debtor after the order for relief under this chapter, the court shall grant the
> debtor a discharge of all debts provided for by the plan or disallowed under
> section 502 of this title, except any debt—
>
> …
>
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C),
> (2), (3), (4), (5), (8), or (9) of section 523(a);

11 U.S.C. § 1328(a).

exceptions raised by Corso, i.e., the debts were not student loan debts under § 523(a)(8) and were

not procured by fraud, misrepresentations or false statements under § 523(a)(2)(A). (Docket No.

1-11). Instead, the Bankruptcy Court held that the debts were undertaken by Walker pursuant to

a marital settlement agreement, and, thus dischargeable if she completed all payments under her

Chapter 13 Plan. (*Id*.). This Court agrees with the Bankruptcy Court's conclusions.

    1.  <u>Student Loan Exception</u>

Initially, the Court dismisses Corso's argument that the challenged debt should be

characterized as a nondischargeable student loan under § 523(a)(8). Section 523(a)(8), provides,

in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> …
>
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>
> > (A)    (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

11 U.S.C. § 523(a)(8). This exception to discharge under § 523(a)(8) applies equally to both

students and their guarantors or co-signers of the student loans. *In re Pelkowski*, 990 F.2d 737,

744 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has recognized that Congress's purpose of excepting federally guaranteed student loan debts from discharge in bankruptcy was to prevent "reported abuses of students who obtained the benefits of higher education while avoiding repaying student loans by declaring bankruptcy shortly after graduation." *In re Mehta*, 310 F.3d at 312. By enacting § 523(a)(8), Congress sought to help "preserve the integrity of the student loan program" and, thus, protect creditors from the "legal loophole" which permitted the practice of students receiving the benefit of higher education and then discharging their student loans before they became "wage-earning members of the community." *Id*. at 744.

Given the statutory language, the aforementioned Congressional intent and the Court of Appeals' interpretation of same, it is clear to this Court that § 523(a)(8) does not apply in this case. Simply put, Corso is not a creditor protected by this provision and Walker is not a debtor prevented from discharging any debt by its terms. *See* 11 U.S.C. § 523(a)(8). Based on the Bankruptcy Court's factual findings that Walker was authorized to execute the student loan applications and guarantees on behalf of Corso, which this Court has affirmed, Corso became the debtor and/or guarantor of the student loans.[5] In contrast, Walker never executed the documents herself; thus, she never guaranteed or obligated herself to pay the student loan debt directly to the lender. (*See* Docket Nos. 1-18, 1-19, Plaintiff's Exs. 1, 2). She only agreed to undertake her former husband's obligation to do so in the subsequent marital settlement agreement. (*See* Docket No. 1-22, Plaintiff's Ex. 5). Therefore, the decisions relied upon by Corso, *In re Pelkowski*, 990 F.2d 737 (3d Cir. 1993) and *In re Kuschel*, 365 B.R. 910 (Bankr.E.D.Mo. 2007), are distinguishable. In each of these cases, the debtors were bound by the loan terms and directly

---

[5]     *See* § IV.A., *supra*.

11

liable to the creditors, i.e., the debtor-mother in *In re Pelkowski* signed a parental guarantee for

her child's student loan and the debtor-spouse in *In re Kuschel* was a party to the consolidation

note obligating her to pay the debt consisting of both her and her husband's student loan debts.[6]

*See In re Pelkowski*, 990 F.2d at 738; *In re Kuschel*, 365 B.R. at 912.  In addition, the creditors in

both *In re Pelkowski* and *In re Kuschel* were the lenders which made the loans, the Ohio Student

Loan Commission, and the Pennsylvania Higher Education Assistance Agency, respectively.  *Id.*

Because of the parties' relationship vis-à-vis the outstanding student loan debts, the

purposes of § 523(a)(8) are not frustrated by a discharge of the disputed debts in this case.  *See In*

*re Segal*, 57 F.3d 342, 349-50 (3d Cir. 1995).  Corso remains obligated to pay the outstanding

student loans and the creditors can continue to collect the outstanding debt directly from him.[7]

(*See* Docket No. 1-18, 1-19, Plaintiff's Exs. 1, 2).  On the other hand, Walker has no such

obligation directly to the creditors.  (*Id.*).

As the Bankruptcy Court recognized, Walker's subsequent agreement to pay the student

loans was made pursuant to a marital settlement agreement and became a personal obligation she

owed to her former husband, not to the lender.  (*See* Docket No. 1-22, Plaintiff's Ex. 5).  Corso

---

[6]     Corso highlights the Bankruptcy Court's analysis in *In re Kuschel* that the debtor claimed that she did not
initially sign the challenged loan documents but later ratified same in accord with Missouri law as a consequence of
her subsequent agreement to pay the debts under a divorce property settlement agreement. (Docket No. 7).  He then
argues that *In re Kuschel* is analogous to this case given that Walker did not sign the outstanding loan documents but
subsequently agreed to pay them in the marital settlement agreement. (*Id.*).  This Court does not read *In re Kuschel*
so broadly.  As this Court understands it, the debtor in that case was a named party to the loan consolidation
agreement but she disputed whether she had signed her own name on the applications.  *In re Kuschel*, 365 B.R. at
915.  Despite this apparent dispute, the Bankruptcy Court found that her subsequent conduct in entering into a
forbearance agreement with the lender and agreeing to pay the debts under a divorce settlement agreement ratified
her existing obligations under the student loan consolidation agreement.  *Id.*  Here, Walker was never a party to the
outstanding student loan agreements and did not enter into any subsequent forbearance agreements with the lenders.
This distinction is subtle, but dispositive.  Moreover, even if Corso's summation of *In re Kuschel* is accurate, the
decision is non-binding and this Court does not find it persuasive.

[7]     To the extent that Corso maintains that payment of the student loans presents him with a financial hardship,
the same would only be relevant if Corso was the debtor who sought a discharge of the debts in bankruptcy.  *See* 11
U.S.C. § 533(a)(8) (providing that student loan debts are not dischargeable "unless excepting such debt from
discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents").

maintains that common law theories of third party beneficiaries to contracts and/or surety law demand a different result. (Docket Nos. 5, 7). However, he cites no binding authority importing these concepts into the exception under § 523(a)(8). Again, the Bankruptcy Court and, in turn, this Court, are tasked with applying the plain language of the statutory exceptions and are to construe said exceptions "narrowly against the creditor and in favor of the debtor." *In re* Mehta, 310 F.3d at 311. Applying these principles, the statutory exception under § 523(a)(8) may not be invoked by an individual creditor such as Corso, who has never made any student loan, against a debtor who is not obligated to pay the student loan debts directly to the lender.

In sum, the Bankruptcy Court did not abuse its discretion by holding that the exception under § 523(a)(8) did not apply based on the facts and circumstances of this case.

2. Exception Based on Alleged Fraud, False Statements, False Representations

Likewise, this Court finds that the Bankruptcy Court properly exercised its discretion in denying Corso's claim that the disputed debts were nondischargeable under § 523(a)(2)(A). Section 523(a)(2)(A) provides that:

> (a) A discharge under section 727, 1141, 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> **...**
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). The purposes of this exception are to distinguish the "honest debtor," who is entitled to a discharge from his or her debts and a fresh start under the Bankruptcy Code

from a debtor who has committed fraud on his creditors, who does not merit a fresh start, and to protect creditors from fraud. *See In re Cohen*, 106 F.3d 52, 59 (3d Cir. 1997). The creditor has the burden of proof to show that all elements of § 523(a)(2)(A) are met. *In re Larson*, 2009 WL 2144079, at *3 (D.N.J. 2009) (citing *Grogan v. Garner,* 498 U.S. 279, 288-89 (1991)). Those elements are that:

1. the debtor made a false representation;
2. at the time of the representation, the debtor knew it was false;
3. the false representation was made with the intent and purpose of deceiving the creditor;
4. the creditor justifiably relied upon the representation; and
5. the creditor sustained damages as a proximate result of the misrepresentation.

*In re Ritter*, 404 B.R. 811, 822 (Bankr.E.D.Pa. 2009).

Corso's arguments as to nondischargeability under § 523(a)(2)(A) are two-fold: (1) that Walker committed fraud on the lenders when she signed her former husband's name on the initial applications and guarantees; and (2) that Walker committed fraud or misrepresented the value of the student loans to Corso during the negotiation of the marital settlement agreement. (Docket Nos. 5, 7). The Bankruptcy Court rejected both arguments, reasoning that Corso failed to meet his burden of proof to demonstrate that the debts were nondischargeable under either theory. (Docket No. 1-11). We agree with this analysis.

At the outset, the Court finds that the Bankruptcy Court correctly determined that in light of *Archer v. Warner*, 538 U.S. 314 (2003), § 523(a)(2)(A) potentially covered claims of fraud or false representations committed during an initial transaction or a later settlement agreement resolving a prior fraud claim. In addition, the record supports the Bankruptcy Court's conclusion that Corso failed to meet his burden of proof under either theory.

With respect to the alleged fraudulent conduct by Walker signing her husband's name on the initial applications and guarantees, for the reasons set forth above, this Court affirms the Bankruptcy Court's decision that Walker was authorized to sign them on Corso's behalf pursuant to a long-standing household practice.[8] Thus, this Court give "due regard" to the Bankruptcy Court's finding that there was no credible evidence that any fraud, misrepresentation or false statement was committed by Walker when she executed these documents.

Moreover, to the extent that Corso argues that the alleged fraud under § 523(a)(2)(A) may be predicated on Walker's nondisclosure to the lenders that she signed her husband's name on the loan applications and the guarantees, Corso lacks standing to pursue such a claim. Section 523(c)(1) provides that a debt may be challenged under § 523(a)(2)(A) if a debtor "obtained money, property, services or [credit]" from a "creditor to whom such debt is owed." 11 U.S.C. § 523(c)(1). "[O]nly debt that is obtained by fraudulent conduct is within the scope of § 523(a)(2)(A)." *In re Glen*, --- F.3d ----, 2011 WL 1364462, at *3 (8th Cir. Apr. 12, 2011). And, the alleged fraudulent conduct and/or misrepresentation must be made by the debtor to the creditor concurrent with the transfer. *In re Glen*, 2011 WL 1364462, at *3. By virtue of these provisions, a creditor's standing to invoke § 523(a)(2)(A) is limited to fraud claims stemming from its own transfers to the debtor and is therefore precluded from seeking exceptions to the discharge of debts based on fraudulent activity allegedly committed by the debtor against third parties. *See e.g., In re Glen*, 2011 WL 13644, at *3 (holding that alleged fraud by the debtor on third party lenders did not support a creditor's claim under § 523(a)(2)(A)); *In re Fabian*, 1989 WL 18109, at *3 (Bankr.W.D.Pa. Feb. 28, 1989) ("there is no basis upon which [a creditor] has standing to bring an action against a third party."); *In re Terranova*, 301 B.R. 509

---

[8]     *See* § IV.A., *supra*.

(Bankr.N.D.Ill. Nov. 12, 2003) (holding that "a creditor may [not] seek an exception from discharge for debts owed to another creditor.").

The Court further holds that the Bankruptcy Court did not abuse its discretion by dismissing Corso's claim to the extent he argues that Walker's alleged conduct during the negotiation of the settlement agreement excepted the challenged debt under § 523(a)(2)(A). As the Bankruptcy Court detailed, this claim fails for multiple reasons.

First, although Corso transferred a lump sum of money to his wife in conjunction with the marital settlement agreement, he admitted that his claim against her in the adversary proceeding was limited to recovery of the amount of the outstanding student loans. (Docket No. 1-39 at 21-22). Walker agreed to satisfy these loans pursuant to the marital settlement agreement and to indemnify and hold him harmless regarding said debts. (Docket No. 1-22, Plaintiff's Ex. 5). Section 523(a)(2)(A) is only applicable if a creditor transfers "money, property, services or an extension, renewal, or refinancing of credit" to the debtor and recovery is limited only "to the extent that" said transfer was "obtained by fraud." 11 U.S.C. § 523(a)(2)(A). Thus, because Corso sought only to enforce his wife's obligation to pay the outstanding loans on his behalf, which did not involve the transfer of money, property or services to Walker, the plain language of § 523(a)(2)(A) was not invoked and the Bankruptcy Court properly denied Corso's claim on this basis. *See In re Glen*, 2011 WL 1364462 at, *3 (holding that reduction of value of equity in real estate is not sufficient to invoke the exception under § 523(a)(2)(A)); *In re Thompson*, 354 B.R. 174, 179 (Bankr.E.D.Tenn. Nov. 1, 2006) (holding that assumption of liabilities in purchase agreement did not constitute money obtained by the debtor through misrepresentations).

Second, Corso makes much of Walker's alleged failure to disclose the true amount of the

outstanding student loans at the time of the negotiation of the settlement agreement.[9] However, Corso ignores the unambiguous provisions of the marital settlement agreement, which state that Walker agreed to satisfy the outstanding student loans, without specifying the amounts due. (Docket No. 1-22, Plaintiff's Ex. 5). Pursuant to these provisions, Walker was obligated to pay the entire balance of the outstanding student loans, regardless of the amount. (*Id*.).

Third, because Corso failed to meet his burden to demonstrate that the challenged debt was transferred to Walker based on fraud, misrepresentations or false statements, he could not meet his burden to prove the remaining elements under § 523(a)(2)(A), including that he justifiably relied on Walker's conduct to his detriment. *See In re Ritter*, 404 B.R. at 822.

For these reasons, the Bankruptcy Court did not abuse its discretion by denying Corso's claim under § 523(a)(2)(A).

### 3. Exception Under § 523(a)(15)

In summary, the Bankruptcy Court correctly concluded that the challenged debts arose from Walker's obligations under the parties' marital settlement agreement, making § 523(a)(15) applicable. Pursuant to 11 U.S.C. § 1328(a), such debts are dischargeable if Walker completes the payments under her Chapter 13 Plan. *See* 11 U.S.C. § 523(a)(15). Therefore, Corso's claim under § 523(a)(15) was appropriately dismissed, without prejudice.

## V. CONCLUSION

Based on the foregoing, Corso's appeal is DENIED and the October 22, 2010 Order of

---

[9] The Court notes that although the Bankruptcy Court ruled that § 523(a)(2)(A) did not apply, it did not explicitly resolve the apparent conflict in the evidence regarding whether the amounts of the outstanding student loans were ever discussed during the negotiations between Corso, his attorney Zagardi, Walker and her lawyer Kasbee. Walker testified unequivocally that the amount of the outstanding student loans was not mentioned at all. (Docket No. 1-39 at 90-91, 113-115). Indeed, she stated that she felt threatened by her former husband and that she agreed to pay for the loans because Corso threatened to return to Brazil and walk away from the house that the jointly owned; thereby preventing Walker from being able to sell the house without his agreement and signature. (*Id*.).

the Bankruptcy Court is AFFIRMED.  An appropriate Order follows.


                                                       s/Nora Barry Fischer
                                                       Nora Barry Fischer
                                                       United States District Judge


Date:   May 20, 2011

cc/ecf:  All counsel of record.

          The Hon. Jeffrey Deller, U.S. Bankruptcy Judge